354 Chauncey Realty LLC v B.M. (2025 NY Slip Op 25027)

[*1]

354 Chauncey Realty LLC v B.M.

2025 NY Slip Op 25027

Decided on February 4, 2025

Civil Court Of The City Of New York, Kings County

Jimenez, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on February 4, 2025
Civil Court of the City of New York, Kings County

354 Chauncey Realty LLC, Petitioners,

against
B.M., JOHN DOE and JANE DOE, Respondents

Index No. 326840-23

Green & Cohen, P.C.
319 East 91st Street
Professional Suite
New York, New York 10128
admin@greenandcohenlaw.com
Attorneys for Petitioner — 354 Chauncey Realty LLC 
The Legal Aid Society — Brooklyn Neighborhood Office
111 Livingston Street
7th Floor
Brooklyn, New York 11201
epaesano@legal-aid.org
Attorneys for Respondent — B.M.

Sergio Jimenez, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of respondent's order to show cause (Seq. 4) and respondent's notice of motion (Seq. 5) and any other relief as the court may find appropriate:
Papers Numbered
Order to Show Cause (Seq. 4) with affidavits and exhibits 1 (NYSCEF #21)
Affirmation in Opposition to Seq. 4 and exhibits. 2 (NYSCEF #22-23)
Notice of Motion (Seq. 5) with affidavits and exhibits 3 (NYSCEF #25-41)
Affirmation in Opposition to Seq. 5 and exhibits 4 (NYSCEF #42)
Reply in Further Support of Seq. 5 and exhibits 5 (NYSCEF 43)
This is a holdover proceeding seeking possession of the premises from respondent B.M. pursuant to a 60-day notice of termination. After a variety of adjournments and a transfer to the trial part, eventually the respondent failed to appear and a default judgment pursuant to an inquest was granted to the benefit of the petitioner. Respondent brought their own order to show cause (Seq. 4) as a self-represented litigant claiming that the default judgment should be vacated because their rent was paid for by the Human Resources Administration (HRA, hereinafter). While the court attempts to give self-represented litigants the benefit of the doubt with regards to legal arguments made, here the court cannot decipher upon what grounds the respondent seeks to vacate the default judgment in Seq. 4. As petitioner points out, under CPLR §5015, the respondent would have to show a reasonable excuse first and then a meritorious claim (Li Fen Li v. Cannon Co., Inc., 155 AD3d 858 [2d Dept, 2017]; The court need not analyze the meritorious claim if the moving party cannot establish a reasonable excuse for their absence (MAPFRE Insurance Company v. Callahan, 164 AD3d 1243 [2d Dept, 2018]). Here, the movant has not made out a reasonable excuse. His papers merely state the rent was paid (See NYSCEF #21), while this could be interpreted to formulate a meritorious claim of vitiation of the predicate notice, the court does not credit this statement as a reasonable excuse for the movant's absence. As such, Seq. 4 is denied in its entirety.
The court then turns to Seq. 5. After Seq. 4, the respondent was able to retain counsel [*2]who submitted an omnibus motion seeking a variety of relief. Respondent's counsel seeks to supplement Seq. 4, as the motion is largely duplicative of the instant motion and has been dealt with, the court denies this branch of the motion as moot. As secondary relief, respondent seeks to anonymize the caption of the proceeding, the parties both consented to this change, and it has been amended in the court system case management software. As such, the second branch of the motion has been settled. Respondent then moves to have a CPLR Article 12 guardian ad litem (hereinafter GAL) appointed for the respondent. Upon doing so, respondent seeks the vacatur of the default judgment entered against the respondent on various grounds including CPLR §5015(a)(1), CPLR §1203 and the courts inherent authority to enforce its own orders. Upon vacating the default judgment, respondent seeks that the proceeding be dismissed due to the alleged impropriety of the predicate notice both in substance and in service. In the alternative, respondent seeks to amend their answer and, in the last recourse, the respondent seeks a stay of the execution of the warrant of eviction for the respondent to vacate the premises after some "reasonable period of time." Petition submitted their opposition as to some relief and respondent submitted a reply. The court heard argument on January 27, 2025 and reserved decision.
There are three main types of guardianships in New York State that generally affect housing proceedings: Article 81 guardians, Article 17-a guardians and Article 12 guardians. While Article 12 guardians are the most common, it is worth briefly describing each of these types of guardians and their genesis. Article 81 guardians are the most involved type of guardianship and require a supreme court case to appoint someone to make decisions for another person. This dramatic outcome stems from Article 81 of the Mental Hygiene Law. Article 17-a guardians are created by Article 17-A of the Surrogate's Court Procedures Act, whereby a family member petitions the court to be named legal guardian for an adult who may have a condition which makes it difficult for them to make decisions for themselves, for example someone with a traumatic head injury. Article 12 guardians find their genesis directly in the CPLR, namely sections 1201 and 1202, and are used, in housing court, to assist litigants. Importantly, they are not a decision-making position bur rather one who provides aid in applying for "public assistance or arranging clean-ups" (Prospect Union Associates v. DeJesus, 167 AD3d 540 [1st Dept 2018]). In fact, in extreme situations the GAL may not be able to provide the level of assistance required by the ward and be unable to enter into any type of agreement (New York Foundation for Senior Citizens v. Hamilton, 170 AD3d 543 [1st Dept 2019]). In these cases, some GALs have sought to make a referral for an Article 81 Guardianship with the HRA's Office of Legal Affairs.
While the above categories attempt to be formalistic in their appointment and procedure, the court cannot be blind to the realities of the programs as they interact with litigants in housing court. The GALs on the roster are overworked and under-resourced. The rates being paid for their aid falls far below the compensation level needed for the work required to meet the ward's needs. Some GALs have legal training and some of them do not.[FN1]
 Some litigants do not work well with certain GALs and some GALs have different reactions to the wards they are assigned. As in life, not all matches are perfect. However, the GALs generally help the ward attend court, coordinate with APS and may be involved in negotiation with the other parties. The GAL program that services housing court is limited in a variety of ways, not only due to the shrinking [*3]roster of guardians but also due to circumstances of life. Some GALs cannot afford to be GALs for a prolonged period of time due to personal matters, some have health concerns that limit their mobility. Often time the GALs appear instead of their wards at trials, since they are not decision-makers, and the trial becomes an inquest against a non-legally trained uninterested party.
Here, the respondent seeks to have a GAL appointed for the respondent for reasons unknown. As stated above, different GALs have different bandwidth and commitments. Respondent does not state why they seek to have a guardian appointed, especially now in the midst of being represented, ably, by counsel. This brings, before the court, a question of how guardians are rostered, trained and what is expected of them. Generally speaking, while the guardians are of an assistive quality, their abilities and resources are not limitless and, theoretically, each ward could have a multitude of needs that are interrelated to a housing issue.[FN2]
So to what end is a GAL sought, here? Particularly due to the panel approach to the rostering of Guardians, which lead to extremely varied results.
One possible solution instead of an 18-b panel type of roster, the court or HRA could bring guardians in-house, pay them a salary to work with all of the wards who require the aid by borough, thereby streamlining not just the compensation mechanism and schedule but also the scheduling that tends to be difficult given the number of guardians and the fact their "representation" runs over all of the boroughs in the city. The court would still need a roster of available guardians, but the dependance on such a wide roster would lessen. In 2016, there were 1,600 GALs appointed by housing court.[FN3]
As of August 2023, HRA raised the compensation for each GAL to $1,050. Extrapolating that amount over the course of a year would result in close to $1.7 million per year. That amount would allow HRA or OCA, depending on which agency could best house these litigant services, to hire dedicated lawyers/social workers/mental health professionals to, with the resources of a government agency, assist the various wards. This may also have the positive effect of baselining the types of services provided by the GALs.
These guardianships should also be viewed in light of Article XVII of the New York State Constitution gives the state a wide-ranging mandate that states, in part, "The aid, care and support of the needy are public concerns and shall be provided by the state . . . " The court must, as a state actor, imagine a better world being possible. It cannot ignore the Article XVII directive and, as such, must make an inquiry as to whether a GAL is needed, when issues such are these are brought to the court's attention. In fact, this very court, under less sympathetic circumstances, has stressed its belief as to the importance of making the GAL inquiries (5712 Realty LLC v. Ricketts, 2025 NY Slip Op [Civ Ct Kings County 2025]).
To that end, the court must turn its attention to the relief sought. The standard that must be met under CPLR §1201 is that a person "shall appear by . . . guardian ad litem" if they are an adult who is "incapable of adequately . . . defending his rights" (CPLR §1201). Further, respondent seeks to enforce another provision of the CPLR which states no default may be entered against an "adult incapable of adequately protecting his rights" (CPLR §1203; G&M Realty I LLC v. Monell, 2022 NY Slip Op 34460[U][Civ Ct Bronx County 2022]).[FN4]

Here, respondent's counsel argues that respondent previously had a GAL in a prior proceeding (L&T 76945-19KI), that his underlying medical condition and that the side effects of his current medication affect his ability to assert his claims and defenses and therefore needs a guardian. The court finds that these allegations are more likely than not call for the appointment of a guardian, however, the court also credits petitioner's argument that these allegations do not, as a matter of law, necessitate a guardian appointment. For example, petitioner is correct that the mere appointment, six (6) years ago, of a guardian does not necessarily mean that the respondent requires one now, especially when the conditions alleged of are not age-related. Further, underlying medical conditions and medication both can change with not only time but with the individuals body chemistry. Diseases fall in and out of remission, new medicines, especially within the span of six years, change in their chemical makeup, potency and side effects as research continues. As such, the court cannot opine as to the necessity of a guardian without a fact-finding or, at least, further briefing of this particular issue. Petitioner may present allegations that Respondent was and is adequately able to defend his rights and claims as evidence of the lack of need for a GAL. Protection under this statute, that is the appointment of a GAL, requires no specific diagnosis and may have determinations made "even . . . based upon the observations of a lay person" (529 West 29th LLC v. Reyes, 63 Misc 3d 65 [App Term 1st Dept 2019]). To that extent, petitioner will be able to make their argument against. At that time, the court will be able to hear such arguments and attach the appropriate weight and credibility. As such, the court holds, in abeyance, the remaining relief sought not enumerated above. The parties are ordered to appear in Room 505, Part O on 2/20/2025 at 2:15pm for a hearing on the propriety of the appointment of a guardian ad litem. This constitutes the decision and order of the court.
Dated: February 4, 2025
Sergio Jimenez, JHC

Footnotes

Footnote 1: https://ww2.nycourts.gov/COURTS/nyc/housing/GALprospective.shtml

Footnote 2: The court adamantly believes that acknowledging the intersectionality of legal issues for those users of high-volume courts is paramount to solving those problems. In other words, the criminal case, the public benefits issue, the health insurance problem, the Article 10 family case and the housing court case do not exist in vacuums but rather as an interplay between the various problems. The court believes that addressing these issues together and not separately could result in exceedingly positive results to all parties involved.

Footnote 3: The New York State Courts Access to Justice Program Report to the Chief Judge and the Chief Administrative Judge of the State of New York 2016 outlined these numbers. https://www.nycourts.gov/LegacyPDFS/ip/nya2j/pdfs/NYA2J_2016report.pdf

Footnote 4: The court notes this is not the only statute/theory upon which the respondent is relying for the vacatur of the default judgment and has enumerated other grounds, including CPLR §5015(a)(1) (see Woodhull Park 191 LLC v. W.M., 83 Misc 3d 1254 [Civ Ct Queens County, 2024]).